May it please the Court, my name is Stacey Tolchin and I represent Petitioner Shabbir Shaikh. I would like to reserve five minutes of my time for rebuttal. Petitioner applied for amnesty in 1990, 25 years ago. He's actually been trying to get his residency since 1987, when the government wrongfully turned him away from applying for amnesty because of his international travel. He's now 60 years old, after having originally come to the U.S. in 1981 at the age of 26. He now seeks review of the Administrative Appeals Office, or the AAO's, 2006 and 2009 decisions denying his applications for life legalization and for amnesty, based on findings that he did not establish his residency from the periods from 1982 to 1988, and therefore was statutorily ineligible for temporary or permanent residency. Right, and so what he's got to show under the settlement for the Catholic Social Services case is not just residency, but continuous residency. Correct, Your Honor. Yeah, so the fact that he was here, that in itself is not enough. He's got to have been here continuously. Right, for the period, and then from 1982 to 1988. Yeah. So when Congress passed the amnesty laws in 1986, there were significant problems in implementing them, resulting in multiple class actions, including the CSS case, and for that reason, Congress then passed the Life Legalization Act in 2001. Petitioner now has two routes to residency, one through the temporary residency, which is the Form I-687, or the amnesty case, and the second is the life legalization case, which is the Form I-485. Two separate routes. The 485 lets him bypass temporary residency and go straight to permanent residency. Under both applications, the standard is preponderance of the evidence. This is the lowest burden under civil proceedings, and precedent in matter of EM states that in order to prevail under this standard, the applicant need only establish that his claim is probably true. This was not the standard that was applied by the AAL when adjudicating both applications, and the court now reviews both decisions under the abuse of discretion standard. Now first as to the 2009 denial of the I-687, so the amnesty case, the AAL clearly abused its discretion. The basis for the decision was a single 1984 letter from Pakistan, which the AAL states contained a fraudulent stamp. The AAL makes this conclusion based on a 2009 Scott postage stamp book that is not contained in the record of proceeding. The court can't review the AAL's determination that the stamp was fraudulent because the Scott's postage stamp book is not in the record of proceeding. The amnesty statute... Go ahead, please. Hasn't the Scott's postage stamp book been used? I read somewhere in the record. I mean, it's been used dozens if not hundreds of times. I mean, it's not a difficult book to get your hand on. Well, it's hundreds of times, Your Honor, but the statute is clear for purposes of the administrative appeal and for judicial review that the record is solely the administrative record. So when the AAL is adjudicating an application, it is solely based on the administrative record. And when this court is reviewing the AAL's decision, it is solely based on the administrative record. How is the court supposed to judge whether the agency abused its discretion if it doesn't have the postage stamp book? Further, the regulation at 103.2B16 also limits decisions of statutory eligibility to the record of proceeding. Because the book isn't included, that's an abuse of discretion. Counsel Judge Gould, if I could ask you a question. I'm just one of the judges on the panel. But to me, the issue of the stamp issuance date compared to the postmark date is important. And I don't understand why, if the Scott book is critical, our panel could not take judicial notice of that type of work and look at the book or why the agency couldn't. So I don't really understand your argument that your client prevails because the book wasn't put into the record if it's a typical reference book. Your Honor, I direct the court to the decision in CIRCU, which was a case of the Board of Immigration Appeals, where the court does address, I think it's an en banc decision, addresses administrative notice. And there can be administrative notice if there is an opportunity to respond. The problem in this case, it gets complicated because not only was the 2009 book not given, and yes, it is publicly available for a fee, is what the footnote says in Respondent's Brief. The problem also is that he requested that the 1984 original letter be provided for him so that he could review it for purposes of authentication. Yeah, but that seems to me a kind of a weak argument, meaning all you've got to do is look at the letter. I've seen a picture of the letter and a picture of the stamps. So it's not as though the physical letter has to be in your hand. All you have to do is look at what stamp that is, whose picture on the stamp and so on. You don't need the letter for that. And I understand there's a dispute as to who physically had the letter, but I don't see that that dispute needs to be resolved because your client could make a perfectly adequate response without having the letter in his hand. Whether he did it or whether he had it or the government had it, I don't care. Okay, well let me move along then to the real issue then is that the decision denies the amnesty case on one letter. But when you look at the full record of proceeding, which is discussed more thoroughly in the life legalization case, under the preponderance of the evidence, the evidence established is probably true. You've got the authentication. But the AO thought the evidence put into one side of the letter was insufficient. They didn't believe that evidence either. So the letter only pushes them further in the same direction. Right, but the decision doesn't reference the other evidence. The decision for the amnesty case only references the 84 postage stamp. There was a notice of intent to deny. The lower decision from INS did deny on that ground. But then ultimately after all of this briefing, there's only one basis for the AO decision on the amnesty, and that's the 84 letter. But look at the other evidence in the record. I mean, he has verification to 10 other postage items that are in there. He's got letters from employers. He's got letters from the mosque. He was interviewed in 1990 in the application. But much of that evidence, and I'll say it again, is the evidence that the AO found in the other proceeding totally unconvincing. Right, but going to that proceeding, when you look at those reasons, even that doesn't make sense. They nitpick at all of the letters from the friends saying, well, this one doesn't attest to that time period or this. But when you put all the time periods together from when the friends say they know him, that covers the period that's relevant from 82 to 88. So their nitpicking is sort of, well, Mr. Iqbal only knew him from this time period. He doesn't talk about this period. But putting them together, that covers the comprehensive scheme. The same thing is true with the, they nitpick on the mosque letter, but the mosque letter, they don't consider all of this evidence. This is probative evidence, which under matter of EM must be considered, even if it doesn't meet every little regulatory requirement. And instead, it's entirely discounted. I mean, there's nothing that's, even if the 84 letter is inconsistent, that's not enough to deny the case, given the other information that's in there. What about the fact that Mr. Sheikh was given an opportunity to amplify the record, to supplement the record, and to address these concerns, which I understand he didn't do in this case. Oh, no, he did do it. But he didn't do it by providing any additional documentary evidence, did he? He did. He did. It was lost. And so then on the appeal to the AAO. What was lost? You mean the 1984 postmarked envelope was lost? The original one was lost. I mean, it's very hard to tell from the record, but what it does appear is that the 84 envelope was sent in the original format with a number of other original documents, and then that was never put into the record. But wasn't he given the opportunity to provide additional documentation, and instead he simply offered argument through counsel, as opposed to supplementing the record with documents? No, in the Amnesty case, he submitted on appeal new evidence, because he had previously submitted it. What was the new evidence he submitted on appeal? The evidence was that included copies of the documents that were submitted in the legalization case, but it was the letters. That's where the Oklahoma City letters come in, because they're submitted in the Amnesty case for the first time on appeal. And that's why the AAO, in its decision, says, well, you lived in Houston, why are these addressed to Oklahoma? For the first time now, you're saying that you had relatives that were in Oklahoma. But that's the first time those were submitted. So they were submitted previously, but then lost. These are one of the two packets that were lost by the agency. So going back to the court's decision in CODCA versus Holder, even if that 1984 stamp is fraudulent, there's no reason to believe that the rest of the stamps are fraudulent, and that CODCA establishes that fabrication of material evidence does not necessarily constitute fabrication of a material element. And so even if one document, being this 1984 postage stamp, isn't correct, the rest of the documentation is authenticated. I'm suspicious of that argument. I mean, I understand that somebody could have produced one fraudulent document, that is to say the letter that purports to have come in 1984, but in fact has a stamp that wasn't available until 1989. That's fraudulent. Let's assume for the purpose of my question that that's fraudulent, and that every other piece of evidence is entirely genuine. That could be. But I don't know that the government is foreclosed from concluding that if they found one piece of fraudulent evidence, that the rest of the evidence is at the very least suspect, and they're not going to treat it as probative. I think that does make sense, and I think the regulations and matter of EM allow for that.  I mean, honestly, in the other decision from Tooth, the earlier decision regarding life legalization, the nitpicking of those friends' letters makes absolutely no sense. When you go back, they match completely to the time periods of his residence that are listed on the application originally from 1990. They're entirely consistent. The only things that appear to be consistent are a typo and when he worked on the employment letter, which is mentioned, and the 1984 letter. But everything else is consistent. What's also not mentioned in either decision is the fact that he was interviewed in 1990, and the INS officer called people and actually verified their claims. And if you look at the record, there's notations in the record where it says, says they worked together, for instance, page 505 of the record, page 507 says they lived together, and there's a notation. So all of this was verified in 1990, and then later in 2009 and 2006, later there's denials. But at the time when it was close to contemporaneous record-taking, these were all verified. Okay. You know, you wanted to say five minutes. You're down to about three. Should we hear from the government? Yes, Your Honor. Thank you. And then you'll have a chance to respond. Thank you. May it please the Court, Victor Lawrence on behalf of the Attorney General. This Court should deny this petition for review because the agency acted appropriately and within its broad discretion when it denied petitioner's applications for legalization and amnesty. As Justice Christensen pointed out, this petitioner had multiple opportunities to supplement the record with credible evidence to prove his continuous residence between 1982 and 1988. What about the fact that he was only given 15 days to produce evidence rebutting the initial finding of fraud? Do you think that's enough time, particularly since we're dealing with a document that was 20 years old? Yes, because you're correct that he was only given 15 days. He didn't ask for an extension of that time, which he could have done but did not choose to do so. So within that time, he could have gone to the Los Angeles Public Library, which, by the way, the Court could take judicial notice. Scott's stamp catalog is available at the Los Angeles Public Library, at least it is today. I can't be sure what it was then, but it is that much of an available document. You don't only have to get it through the Internet. But yes, that was sufficient time for him to claim in some way that the 1989 stamp was not actually issued in 1989, that it was issued previously. But he never made that argument. Instead, he made straw man arguments that the Court's easily able to see through, that he didn't have the opportunity to look at the document, the actual document, and therefore somehow he was deprived of process in that way. So I do think that 15 days is sufficient. 15 days sounds almost an insulting amount of time. The guy's – where the person is going to be allowed to live is at stake. We've had this litigation that's been going on for years, and all of a sudden the government says, unless you come up with this in 15 days, after having made a very serious charge of fraud, that does not strike me as a very reasonable thing for the government to do. I understand your response of, well, he could have asked for an extension and did not. But I have to say I'm not very impressed by the government's sense of fairness when they say you've got 15 days. Well, that is the typical amount of time, as I understand it, that the government provides when there's a notice of intent to deny an application, that you have 15 days to provide additional information. I'm not sure whether there's any wiggle room where they can't provide more or less. But remember, while this Court may see it as an insulting amount of time, the agency may have also seen it as insulting that somebody would try to promote a fraud on them by including a 1989 stamp. I understand that, but what they're asking for is, well, we think it's fraud. We've concluded it's fraud, but maybe we're wrong. Tell us we're wrong. And you have 15 days to do it. And Petitioner was represented by counsel who had the opportunity, again, to ask for more time. Are those requests typically granted? My sense, I don't want to misrepresent, but my sense is that they are, but I don't have statistics on that that I could offer you. Well, it would certainly be an abuse of discretion if he'd asked for 15 more days. I assume you would concede, and if that request had been rejected. That would be a closer call, Your Honor. I understand your position on that, but that's not what happened. And neither has Petitioner.  I'm sorry. I know that's not what happened. Right. And neither has Petitioner suggested that 15 days was insufficient to counter the government's findings. They responded within 15 days. They responded with a lot of arguments, all Petitioner arguments just about this, as opposed to actual documentary evidence. But they responded within 15 days and provided their position. So we would say that while we understand the Court's concern about the amount of time, the Petitioner did have ample time to rebut that. Now, again, the whole idea here is that the Petitioner has to provide sufficient, credible evidence to show continuous residency over that six-year period, 1982 to 1988. And he had multiple opportunities. One opportunity with respect to the fraud, but with respect to showing continuous residence, he was given requests for evidence. He was given notices of intent to deny in earlier applications. He had the ability to come forward with additional evidence to show, yes, indeed, he was there. But instead, he relied almost entirely on his original production back in 1990 and said, you know, this is what I have. I have my affidavits of these six individuals. I have these employment letters. And I have this one letter from this individual who was at the Islamic mission that he was relying on. But none of those, first of all, the government would submit that that was a meager submission. It wasn't very quantifiable. It wasn't very voluminous. It didn't show that there wasn't a lot there for the government to rely on to show that he was there for the continuous time period. We would also say that it was nonconformant with the regulations. Regulations require more. Regulations say, look, with respect to your employer, you've got to show, the employer's got to say that, you know, you lived at this particular address. We have you down as having lived here during that time period. His letters did not do that. And the AEO rightfully pointed that out. And it is significant that that one company, Eastern Texas Uniform and Linen, indicated that he had worked there from 84 to present. The company didn't charter its corporation until 1988. And here you have this company saying he worked there from 84 to present. And he could say all day long that that's a typo. It seems rather unlikely, given that the company who didn't incorporate until 88 is saying that he worked there from 84. So the AEO reasonably found that these things didn't add up. And he had to prove by preponderance of evidence that it was more likely than not that he was here for that continuous period. And the AEO acted rationally and within their broad discretion in finding that he had not provided sufficient probative evidence and that it was minimally probative based on the documents that he provided. So unless the court has any additional questions, I'm happy to rest on that. But we encourage the court to deny the petition for review as, again, the AEO acted rationally and within its broad discretion in denying these applications. Thank you. Thank you. You've saved some time. Great. Thank you. I'm still hung up on whether Mr. Shake availed himself of the opportunity to supplement the record. I'm really having trouble with that. Your Honor, if I can direct. I'd like to know what he supplemented the record with. It's in the record. The AEO issued a notice of intent to deny at page 121 of the record. Page 12 to 20 is a response to the AEO's notice of intent to deny. Attached to that are all kinds of documents that were included. And the evidence here comes from the period between 82 and 88 because that's the period that matters. So the evidence that was submitted here is new evidence in the amnesty case because it was submitted previously. But it was evidence submitted in the other case. It was, Your Honor. Yes, that's correct. Which had been deemed insufficient in the other case. Right. And what I think the government was really wanting in the stamp case was, give us something that tells us that we're wrong about the date of the stamp. And your client did not do so. Right. So there's a couple things. He asked for the original back. That's what he asked for. I think the original was lost. That's what it seems like from the record. Is there any question, though, that the copy that we have is a true and accurate copy of the original? I don't think there's questions on that, Your Honor. I mean, it's pretty obvious. You can see that, I mean, it's not pretty obvious, but you can see the 1984 stamp. And then I'm assuming the stamps over on the right-hand side are the ones from 1989. There is no issue on the accuracy. The issue is having the court now compare the two things when it doesn't have the catalog before it. But just to answer a couple of other issues, the regulation at 103.2B8 lays out the time period for a response to a notice of intent to deny. What it does say is that the maximum time that can be afforded is 30 days. In practice, however, you can request extensions, but they are not always granted. In fact, to be honest, a lot of things get lost by CIS. And this is what happened here. We've got two submissions that were lost. And Mr. Shake did not request an extension. He did not. What he did request was copies of the documents so that he could review them, and that's done extensively in the brief. But I also- He requested, I think, original. Yeah, I'm sorry, the originals of the documents to be returned. The other thing I just want to point out to the court notes is that the judicial review scheme- What's the importance of having the original if we've got an accurate copy? You know, it wasn't clear what they were talking about. I mean, the problem here is that I think the most cautious way to have done things is said, here's what you submitted. We don't think it's accurate. Here's the relevant portions of the 2009 book we're relying on. Respond. That's, I think, what should have been done under the regulations and the statute. But instead, it's this very lengthy decision where- I mean, you know, the AAO makes mistakes all the time. In fact, if you look at one of the decisions, they refer to his case as a visa petition. It's not a visa petition case. It's an amnesty case. There's errors all the time. And so how do you know that the AAO is accurately reviewing something unless there's really notice of what the issue is? But the one thing I want the court just to review here is that in order to get judicial review of this case, he had to affirmatively go to immigration and say, put me in removal proceedings. I can't even get to the court unless I have a removal order. So this whole process is done with this sort of, you know, documents getting lost, lack of clarity, and he has to get a removal order from the immigration court in order to get review. The stakes are very, very, very high. And we did 28J, a case that came out three weeks ago called ASSE v. Cary, where the court looked at a different issue on an immigration case. But there really are high due process interests here, and this is a situation which we'd be happy to brief more that really could trigger something like Matthews v. Eldridge's balancing test. I just have trouble getting around. Apparently it's undisputed that the copy that we have is the actual letter. It's undisputed that the letter was purportedly sent in 1984. It's undisputed that the AO said the stamp was not available until 1989. And your client has given us nothing to say that that stamp was available in 1984. Right. I mean, I agree with that. What he was trying to do was review it and respond. I also just want to point the court. But he never has. He's never said that stamp was available in 1984, and he's never given us any reason to believe that it is, that it was. Right, because he, you know, I mean, he, the attorneys, they didn't look at the 2009 postage stamp catalog. They didn't compare it because they wanted to actually look at the letter. That's what happened. Counsel, why did they need to look at the original of the letter to make that comparison? I think what they were concerned about was which actual document was the AO referring to. Because of this, the lack of clarity with the AO and the errors already, they wanted to be sure that, okay, here's the document, and then they could go look at it. And what they probably wanted to do was to go and get it certified as authentic if it was possible. But they were, all they were doing was trying to say, which letter are you referring to given there were so many letters? But there's other things in the decision that are notable. For instance, the Social Security number, they say, well, you know, how do we know that you used it because you didn't pay taxes on it? Well, one of the requirements for amnesty was that you worked unlawfully. And, in fact, in the 1990 interview, they called the employers and verified that he was using the false Social Security numbers. So how is that a basis? I see him running over. Thank you, Your Honors. Okay. Thank you. Thank both sides for your helpful arguments. Sheikh versus Lynch submitted for decision, and we will take a five-minute recess.
judges: Christensen, Fletcher, Gould